UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KENNETH NOEL                                    CIVIL ACTION

VERSUS                                          NO. 17-1989

INLAND DREDGING COMPANY,                        SECTION "R" (3)
LLC, AND HUNTER MARINE
GROUP, LLC

## ORDER AND REASONS

Before the Court are Defendant Hunter Marine Group, LLC's two motions *in limine* to exclude the expert testimony of Glenn M. Hebert and Dr. G. Randolph Rice.[1] For the following reasons, both motions are granted in part and denied in part.

## I.  BACKGROUND

This case arises out of an accident involving Defendant Hunter Marine's vessel, the M/V MISS MONA.[2] On March 16, 2016, Plaintiff Kenneth Noel was a passenger on the M/V MISS MONA when the vessel ran aground.[3] Plaintiff asserts that he was thrown forward by the impact, and other men fell on top of him.[4] Plaintiff alleges that he suffered serious

---

[1]   R. Doc. 37; R. Doc. 38.
[2]   R. Doc. 3; R. Doc. 37-1 at 1; R. Doc. 39 at 2.
[3]   R. Doc. 37-1 at 1; R. Doc. 39 at 2-3.
[4]   R. Doc. 39 at 3.

injuries to his lower back as a result of the accident.[5] According to the complaint, plaintiff was on Hunter Marine's vessel in the course of his employment as a seaman with Defendant Inland Dredging Company, LLC.[6]

On March 9, 2017, plaintiff filed suit for damages against Inland Dredging and Hunter Marine.[7] Plaintiff alleges that his injuries were caused by defendants' negligence and/or the unseaworthiness of the vessel.[8] He asserts claims for past and future wage loss, medical expenses, pain and suffering, maintenance and cure, and other damages.[9] This case is set for a bench trial to begin on May 14, 2018.[10] Hunter Marine now moves to exclude plaintiff's vocational rehabilitation expert, Glenn M. Hebert, and plaintiff's economic expert, Dr. G. Randolph Rice.[11]

## II.  LEGAL STANDARD

Federal Rule of Evidence 702 provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony when "scientific, technical, or other specialized

---

[5]  *Id.* at 4; R. Doc. 3 at 3 ¶ IX.
[6]  R. Doc. 3 at 2 ¶ VI.
[7]  R. Doc. 1.
[8]  R. Doc. 3 at 2-3 ¶ VIII.
[9]  *Id.* at 3-4 ¶¶ X-XII.
[10] R. Doc. 21.
[11] R. Doc. 37; R. Doc. 38.

2

knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. To be admissible, Rule 702 requires that (1) the testimony be based on sufficient facts or data, (2) the testimony be the product of reliable principles and methods, and (3) the witness apply the principles and methods reliably to the facts of the case. *Id.*

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999) (clarifying that the *Daubert* gatekeeping obligation applies to all forms of expert testimony). The Court's gatekeeping function involves a two-part inquiry. First, the Court must determine whether the expert testimony is reliable. The party offering the testimony has the burden to establish reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The Court must assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 590. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation. *See id.* The Court's inquiry into the reliability of

expert testimony is flexible and necessarily fact-specific. *See Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000).

Second, the Court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence. *See Daubert* at 591. This is primarily an inquiry into the relevance of the expert testimony. *See id; see also Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). Expert testimony is unnecessary if the court finds that "the jury could adeptly assess [the] situation using only their common experience and knowledge." *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).

## III. DISCUSSION

Hunter Marine moves to exclude Hebert's testimony on the grounds that his opinions as to plaintiff's work-life expectancy and future economic loss are unreliable.[12] Hunter Marine further moves to exclude Dr. Rice's testimony because his opinions are based on Hebert's purportedly flawed calculations.[13] Hunter Marine does not challenge the expert qualifications of either witness.

---

[12] R. Doc. 37-1 at 2.
[13] R. Doc. 38-1 at 1.

4

### A. Diminished Work-Life Expectancy

In his expert report, Hebert opines that plaintiff's disability can be expected to reduce his labor force participation by between 10.1 and 12.3 years.[14] Hebert's opinion relies on the Gamboa Gibson Worklife Tables, which are created using census data from the Current Population Survey and the American Community Survey.[15] Based on the information provided by the parties, the Gamboa Gibson tables appear to calculate average work-life expectancies for broad categories of disabled, severely disabled, and non-disabled individuals.[16]

Hunter Marine argues that Hebert's opinion as to plaintiff's diminished work-life expectancy is based on unreliable methodology and unsupported by medical evidence.[17] Citing to a vocational rehabilitation treatise, Hunter Marine contends that the Gamboa Gibson data sets are too broad to predict outcomes in individual cases.[18] In response, plaintiff asserts that the Gamboa Gibson tables were independently replicated by the Center for Labor Market Studies at Northeastern University.[19] But plaintiff

---

[14] R. Doc. 37-2 at 10.
[15] *Id.*; *see also* R. Doc. 37-4 at 53; R. Doc. 39-1 at 2.
[16] R. Doc. 37-4 at 53; R. Doc. 39-1 at 8.
[17] R. Doc. 37-1 at 6-8.
[18] *Id.* at 7; R. Doc. 37-4 at 54.
[19] R. Doc. 39 at 7.

5

does not respond to the argument that the tables cannot usefully predict the work-life expectancy of specific individuals.

Hebert's report quotes the Gamboa Gibson treatise for the proposition that "[d]isability significantly reduces both earnings and worklife expectancy," but Hebert does not explain how plaintiff's particular disability is likely to affect his individual work-life expectancy.[20] Individuals can be classified as disabled for many different reasons, with widely varying possibilities of returning to work. Even assuming that the Gamboa Gibson tables accurately reflect the average work-life expectancy of disabled versus non-disabled populations, plaintiff fails to show that these tables can reliably predict the future work-life expectancy of a specific person. *See Lackey v. Robert Bosch Tool Corp.*, No. 16-29, 2017 WL 129891, at *10 (E.D. Ky. 2017) (excluding expert testimony based on the Gamboa Gibson tables because the expert "grouped [plaintiff] with a wide range of 'disabled' persons, with little to no regard for the type or permanency of the injury, work history, or the ability and intention to return to work"). Accordingly, the Court finds that Hebert's opinion as to plaintiff's reduced work-life expectancy is unreliable, and thus inadmissible.

---

[20]   R. Doc. 37-2 at 10.

### B. Pre-Accident Earning Capacity

Hunter Marine also seeks to exclude Hebert's testimony as to plaintiff's future economic loss.[21] Specifically, Hunter Marine contends that Hebert's calculation of plaintiff's pre-accident earning capacity is unreliable because it fails to consider plaintiff's full work history.[22] Hebert calculates plaintiff's pre-injury earning capacity by annualizing the wages he earned at Inland Dredging before he was injured.[23] Plaintiff was employed by Inland Dredging for about six months before the accident, and earned $17.50 per hour at the time of the incident.[24]

Hunter Marine does not contest that Hebert's calculations are based on plaintiff's actual earnings at the time of his accident. But Hunter Marine argues that plaintiff was unlikely to continue working at Inland Dredging at this wage level because he has in the past struggled to stay at a job for a sustained period of time.[25] Hunter Marine contends that plaintiff never earned more than $30,000 in a year, and any calculation of his pre-accident earning capacity should take into account the entirety of his work history.[26]

---

21      R. Doc. 37-1 at 2.
22      *Id.* at 9.
23      R. Doc. 37-2 at 8-9.
24      R. Doc. 37-1 at 3; R. Doc. 37-2 at 8; R. Doc. 39-3 at 10, 15.
25      R. Doc. 37-1 at 3, 9.
26      *Id.* at 9.

The Fifth Circuit has instructed that "calculation of the lost income stream begins with the gross earnings of the injured party at the time of injury." *Culver v. Slater Boat Co.*, 722 F.2d 114, 117 (5th Cir. 1983). There is no requirement that earnings be averaged over several years, even in circumstances when the plaintiff earned substantially more at the time of injury than in previous years. *See Martinez v. Offshore Specialty Fabricators, Inc.*, 481 F. App'x 942, 949-50 (5th Cir. 2012) (rejecting argument that lost wages should be calculated based on an average of three or five years of past earnings); *Suazo v. Atl. Sounding Co., Inc.*, No. 05-6043, 2008 WL 57832, at *2 (E.D. La. 2008) (admitting expert testimony estimating gross annual earnings based on plaintiff's earnings for the nine months before his injury).

Hunter Marine's reliance on other cases in which Hebert was excluded is unavailing because in those matters Hebert did not base his calculations on the plaintiff's actual earnings.[27] *Cf. Henson v. Odyssea Vessels, Inc.*, No. 07-613, 2008 WL 449726, at *4 (E.D. La. 2008) (excluding expert because he did not provide any basis or reasons for his estimate of plaintiff's prior earning capacity); *Albert v. Jordan*, No. 05-516, 2007 WL 4124519, at

---

[27]  R. Doc. 37-4 at 11-13.

8

*2 (W.D. La. 2007) (noting that expert did not consider the plaintiffs' prior wages as part of his future earnings analysis).

Accordingly, the Court finds that Hebert's estimates of plaintiff's pre-accident earning capacity are admissible. To the extent that Hunter Marine argues that plaintiff's wages at the time of his injury do not accurately reflect his likely future earnings, it may raise those issues on cross-examination. *See Fick v. Exxon Mobil Corp.*, No. 13-6608, 2016 WL 7976137, at *3 (E.D. La. 2016); *Suazo,* 2008 WL 57832, at *2.

### C. Economic Expert

Hunter Marine moves to exclude the expert testimony of Dr. Rice because his opinions are based on Hebert's report.[28] Hunter Marine does not otherwise challenge Dr. Rice's expertise or methodology.[29] Because Hebert's calculations of plaintiff's pre-injury earning capacity are admissible, Dr. Rice's opinion based on those calculations is also admissible.

Dr. Rice computes plaintiff's net future lost wages by subtracting plaintiff's estimated future earnings from the amount he likely would have earned had he not been injured.[30] Dr. Rice calculates plaintiff's estimated future earnings in two different ways. First, Dr. Rice estimates how much

---

28    R. Doc. 38-1 at 1.
29    *Id.* at 2.
30    R. Doc. 38-2 at 2-3.

9

plaintiff will earn if he continues to work for only 9.67 more years.[31] This reflects Hebert's estimate of plaintiff's diminished work-life expectancy.[32] For the reasons explained above, the Court excludes Dr. Rice's testimony to the extent that it relies on Hebert's estimate of plaintiff's work-life expectancy.

In the alternative, Dr. Rice calculates plaintiff's future earnings if he continues to work for another 20.87 years.[33] This reflects the future work-life expectancy of an individual of plaintiff's gender, age, and education, according to a Bureau of Labor Statistics study.[34] The parties have not suggested that the Bureau of Labor Statistics data is unreliable. Dr. Rice may rely on the Bureau of Labor Statistics work-life expectancy data in his testimony as to plaintiff's future economic loss.

## IV. CONCLUSION

For the foregoing reasons, Hunter Marine's motions *in limine* are GRANTED IN PART. The Court excludes Glenn M. Hebert's expert testimony as to plaintiff's reduced work-life expectancy. The Court further excludes Dr. G. Randolph Rice's expert testimony to the extent that it relies

---

[31] *Id.* at 2.
[32] *Id.*
[33] *Id.*
[34] *Id.* at 1.

on Hebert's work-life expectancy estimate. The motions are otherwise DENIED.

New Orleans, Louisiana, this __23rd__ day of April, 2018.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE